IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEN VANDO,                          :       CIVIL ACTION
                                    :       NO. 21-724
            Petitioner,             :
                                    :
      v.                            :
                                    :
MICHAEL CLARK, et al.,              :
                                    :
            Respondents.            :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          January 20, 2023

## I. INTRODUCTION

Pro se Petitioner Len Vando was convicted by a jury in the Philadelphia County Court of Common Pleas of third-degree murder in violation of 18 Pa. C.S. § 2502(c). Petitioner was sentenced to twenty (20) to forty (40) years' imprisonment for the offense. Petitioner now brings a § 2254 habeas petition raising four claims: (1) Petitioner's trial counsel was constitutionally ineffective for failing to object to the trial court's reasonable doubt instruction; (2) Petitioner's trial counsel was constitutionally ineffective for failing to file a motion to dismiss the complaint for a violation of his right to a speedy trial; (3) Petitioner's sentence was illegal due to the trial court denying him credit for time served from arrest to sentencing; and (4) Petitioner's trial and appellate counsel

were ineffective for failing to argue that his prosecution was barred by double-jeopardy. <u>See</u> Petitioner's Federal Habeas Corpus Petition 10-25, ECF No. 1 [hereinafter "Pet."]. Magistrate Judge Lloret issued a Report and Recommendation recommending that the petition be granted on the single issue of the constitutionality of the reasonable doubt instruction given at trial and dismissed with prejudice as moot for all remaining issues. <u>See generally</u> R. & R., ECF No. 38.

Petitioner does not object to the Report & Recommendation. Also, the Commonwealth has conceded that Petitioner's first claim should be granted as recommended by Magistrate Judge Lloret in that the Superior Court's denial of this claim on PCRA was an unreasonable application of clearly established Supreme Court precedent. Moreover, the Commonwealth agrees that Petitioner was prejudiced by ineffective assistance of counsel when counsel failed to object to a hypothetical included in the trial court's reasonable doubt instruction. <u>See</u> Commonwealth's Resp. to Pet. for Writ of Habeas Corpus 12-29, ECF No. 34 [hereinafter "Com. Resp."]. I agree with Judge Lloret that the reasonable doubt instruction was unconstitutional and contrary to clearly established federal law as determined by the United States Supreme Court. For the reasons explained herein, Petitioner's habeas petition will be granted.

## II.  BACKGROUND

The facts underlying Petitioner's conviction are laid out in detail in Judge Lloret's thorough Report and Recommendation, and I will recount them briefly here. See R. & R. 2-6, ECF No. 38. The trial court summarized the facts of the case as follows:

> On October 1, 2004, barmaid Maria Nunez was working at the ZIP Code Bar, at the intersection of Hope Street and Lippincott Street in Philadelphia. The ZIP Code Bar was being used as a venue for a birthday party for a member of the Latin Queens, which was the female counterpart of the Latin Kings gang, and many members of both gangs were at the party. Between 12:00 and 12:30 a.m., [Petitioner] and codefendant Juan Navarro showed up for the party. The doorman, who was supposed to search patrons to ensure that they did not bring weapons into the bar, was not at his post when Mr. Navarro arrived. Because weapons were not allowed at the bar, Mr. Navarro handed his gun to Ms. Nunez to hold, and she put it in her purse. Ms. Nunez was familiar with Mr. Navarro, having seen him at weekly meetings of the Latin Kings and Queens. At approximately the same time [Petitioner] and Mr. Navarro arrived at the bar, the victim in this case, Francisco Gonzalez, arrived with his girlfriend.
>
> Near closing time, at around 2 a.m., Mr. Gonzalez was sitting at the bar when he reached over and, using his fingers, "plucked" the crown tattoo on Ms. Nunez's neck that signified her membership in the Latin Queens. After Ms. Nunez told Mr. Gonzalez not to touch her, he claimed to be a "First Crown" in the New York chapter of the Latin Kings. Ms. Nunez expressed disbelief that Mr. Gonzalez was a high-ranking member of the Latin Kings, and therefore asked him to state the "Five Points" of the Latin Kings, which any genuine Latin King would know. Mr. Gonzalez was unable to answer. Ms. Nunez then told another Latin King member, Clemente Garcia, that Mr. Gonzalez was claiming to be a First Crown Latin King, and that he had "plucked" her tattoo. Mr. Garcia then went to talk to [Petitioner]. Thereafter, Mr. Garcia, [Petitioner], and another Latin King, Edward Irizarry, confronted Mr. Gonzalez, telling him that they knew he was not a Latin King, and that he was being disrespectful

3

to them. During that confrontation, Mr. Navarro stood
nearby, staring up and down at Mr. Gonzalez.

Mr. Garcia then approached Ms. Nunez and asked her to
give Mr. Navarro back his gun, which she had been keeping
under the bar. Mr. Navarro also came over to Ms. Nunez
and asked her to give him his gun back. Ms. Nunez
retrieved the gun and gave it to Mr. Navarro. As Ms.
Nunez looked on, [Petitioner], Mr. Garcia, and Mr.
Irizarry dragged Mr. Gonzalez out of the bar. Mr. Navarro
walked behind them out the door. Several other members
of the Latin Kings followed. . . . Once everyone was
outside the bar, [Petitioner] "sucker punched" Mr.
Gonzalez, who immediately fell to the ground. Mr.
Navarro then pulled his gun from his waistband and shot
Mr. Gonzalez multiple times in the head. Everyone
present then fled the scene.

Commonwealth v. Vando, No. CP-51-CR-0510182-2006, at 2-4 (Pa.

Com. Pl. Dec. 29, 2011).

Based on these facts, Petitioner was charged in both

federal and state court with the Gonzalez homicide. See United

States v. Sosa, et al., No. 05-CR-00044, ECF Doc. No. 10

(Indictment); Commonwealth v. Vando, No. CP-51-CR-0510182-2006.

After trial in federal court, Petitioner was found not guilty on

conspiracy to participate in a racketeering enterprise,

conspiracy to commit murder in aid of racketeering, and using

and carrying a firearm during a violent crime. However, he was

found guilty on a separate conspiracy to commit murder in aid of

racketeering and sentenced to 108 months imprisonment, followed

by three years of supervised release.  On the other hand, in

state court, Petitioner's first trial ended with the jury unable

to reach a verdict as to either Petitioner or his co-defendant,

Navarro. After Petitioner's second state trial, a jury convicted Petitioner of one count of third-degree murder, and he was subsequently sentenced to the statutory maximum sentence of twenty to forty years' imprisonment to run consecutive to his federal sentence.

On December 22, 2014, Petitioner filed a pro se petition pursuant to the Post-Conviction Relief Act (PCRA).[1] Petitioner then filed his federal habeas petition in this Court on January 28, 2021, while his PCRA appeal was still pending.

### III. LEGAL STANDARD

A federal district court "shall not" grant a petition for habeas corpus

> unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that

---

[1] One of the five issues raised in the PCRA petitions, designated as claim 4, was that:
> Trial defense counsel was ineffective for filing [sic] to object to the trial court's instruction on burden of proof beyond a reasonable doubt to the jury because the instruction was defective and allowed the jury to convict the defendant on a burden of proof standard below the reasonable doubt standard. The defendant's right to due process of law under the 14th Amendment of the U.S. Constitution[] and the due process clause of the State Constitution was violated by this defective instruction.

Commonwealth v. Vando, Defendant's Rule 1925(b) Statement ¶ 4, No. CP-51-CR-0510182-2006 (Pa. Ct. Com. Pl. Nov. 30, 2018). Judge Erlich denied the claim, and the Superior Court affirmed the denial. Commonwealth v. Vando, 242 A.3d 457, 2020 WL 7028618 at *8 (Pa. Super. Nov. 30, 2020) (Table) (citing Commonwealth v. Moore, 225 A.3d 1155 (Pa. Super. 2019)).

> was based on an unreasonable determination of the
> facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d). Factual determinations made by the state

court are presumed to be correct, and the petitioner bears the

burden of rebutting this presumption by clear and convincing

evidence. Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009)

(citing 28 U.S.C. § 2254(e)(1)).

To prevail on ineffective assistance of counsel claims, a

petitioner "must show that counsel's performance was deficient,"

that "counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed . . . by the Sixth

Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984).

The inquiry proceeds in two steps. At step one, a petitioner

must demonstrate evidence of "ineptitude, inexperience, lack of

preparation or unfamiliarity with basic legal principles" on the

part of counsel. Gov't of Virgin Islands v. Weatherwax, 20 F.3d

572, 579 (3d Cir. 1994) (quoting ABA Standard for Criminal

Justice § 4.47-68 commentary (2d ed. 1980 & Supp. 1986)). At

step two, a petitioner must also show that there is "a

reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to

undermine confidence in the outcome." Strickland, 466 U.S. at

694.

If a party timely objects to a magistrate judge's report and recommendation, the court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). District courts "may accept, reject, or modify, in whole or in part," the magistrate judge's findings or recommendations. Id.

When neither party files timely objections to a magistrate judge's report and recommendation on a dispositive issue, the district court is not required to review the report and recommendation before adopting it. Thomas v. Arn, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."). Notwithstanding, the Third Circuit has held that "in the absence of objections . . . the better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also Fed R. Civ. P. 72, 1983 advisory committee notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

That the Commonwealth agrees with Petitioner that the writ should be granted is not sufficient to discharge the Court's obligation to determine whether a constitutional violation has occurred. As recently stated by Judge Goldberg:

> [U]nder § 2254, a district court's authority to grant the writ is limited to those cases in which there has been a violation of the Constitution or laws of the United States. It logically follows that a district court cannot dispense with this limitation merely because the prosecutor has now changed its position and conceded that there has been such a violation.

Wharton v. Vaughn, 371 F. Supp. 3d 195, 199 (E.D. Pa. 2019).[2] This cautionary note is particularly important where the basis for the Commonwealth's concession is a subsequent prosecutor's evaluation of the ex post credibility of the trial witnesses, based on either recantation, discovery of evidence alleged to be newly discovered, or some other reason. However, because under the circumstances, the challenge is strictly legal and does not put at issue the factual basis of the jury's findings, this concern is less significant here.

**IV.  DISCUSSION**

Petitioner argues that (1) the trial court's reasonable doubt instruction was constitutionally flawed, and (2) his trial counsel's failure to object to the instruction was ineffective assistance of counsel. The Commonwealth now agrees that the

---

[2] Wharton was a capital case, but its teachings are equally applicable to non-capital cases, such as this one.

8

instruction was flawed, and that the Superior Court's decision finding that instruction constitutional was an unreasonable application of settled Supreme Court precedent.

## A. **The Reasonable Doubt Instruction was Unconstitutional**

At trial, the state judge gave the following charge on reasonable doubt:

> Now, in reaching your verdict, the standard that must be met is proof beyond a reasonable doubt. A person can only be found guilty when the Commonwealth proves beyond a reasonable doubt that a crime was committed and that the person on trial committed that crime. This is, in fact, the highest standard in the law. There is nothing greater than proof beyond a reasonable doubt.

> But, ladies and gentlemen, that does not mean the Commonwealth must prove its case beyond all doubt. The Commonwealth is not required to meet some mathematical certainty. The Commonwealth does not intend, nor is it required to answer all of your questions. The Commonwealth is not required to demonstrate the impossibility of innocence.

> A reasonable doubt, it's a doubt that would cause a reasonably careful and sensible person to pause, to hesitate, to refrain from acting upon a matter of the highest importance of their own affairs. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of each of the crimes charged.

> Now, ladies and gentlemen, I find it helpful to think about reasonable doubt this way. I know because I had the great very good fortune to talk to each and every one of you that each and every one of you loves somebody. Each and every one of you has a spouse, a significant other, a sibling, a niece, a nephew, a child, or grandchild.

> Each and every one of you loves somebody. If you were told that your precious one had a life-threatening condition and the only appropriate protocol for that

life-threatening condition was surgery now, you're probably going to ask for a second opinion. You might even ask for a third opinion. You might do research; what is this condition, who are the best doctors in the region, probably in the country. You're going to call everybody you know who has anything to do in medicine. Tell me about this disease. Tell me about this surgery. Tell me about this doctor, what do you know. You're going to do everything you can to gather all the information that you can.

If you go forward, because, remember, at some point the question will be called, do you go forward with the surgery or not. But if you go forward, it's not because you moved beyond all doubt. Ladies and gentlemen, there are no guarantees in life. If you go forward, it's because you have moved beyond all reasonable doubt.

Ladies and gentlemen, a reasonable doubt must be a real doubt. It may not be a doubt that's imagined or manufactured to avoid carrying out an unpleasant responsibility. You may not find a person who is accused of a crime guilty based upon a mere suspicion of guilt.

The Commonwealth bears its burden of proving Juan Navarro and Len Vando guilty beyond a reasonable doubt. If the Commonwealth has met that burden, then Juan Navarro and Len Vando are no longer presumed to be innocent. And you should find them guilty. On the other hand, if the Commonwealth has not met its burden, then you must find them not guilty.

Apr. 20, 2011 Trial Tr. 67:10-70:8. Petitioner's counsel did not

object to the reasonable doubt hypothetical.

The Third Circuit has not yet addressed whether the

hypothetical used in the above jury charge is constitutional.

See Baxter v. Sup't Coal Township SCI, 998 F.3d 542 (3d Cir.

2021) (considering a similar reasonable doubt instruction at the

same procedural posture, the Third Circuit bypassed the question

of whether the use of the surgery hypothetical made the entire

instruction unconstitutional, focusing instead on Strickland's second prong and finding that the petitioner failed to establish prejudice due to the weight of the evidence against him). However, courts in the Eastern District of Pennsylvania that have addressed similar versions of the reasonable doubt instruction are divided on the constitutionality of the instruction.

Some courts have found the instruction at issue to be unconstitutional. See Moore v. Rivello, No. 20-838, 2022 WL 1749250, at *10 (E.D. Pa. May 31, 2022) (Pratter, J.) (finding that there is a danger that the use of an "emotionally charged analogy" contained within "cold, distant, and clinical legalese" can create a "risk that jurors will latch on to the hypothetical or analogy rather than grappling with the vague and abstract concept itself, as they must" (quoting Corbin v. Tice, No. 16-4527, 2021 WL 2550653, at *7 (E.D. Pa. June 22, 2021) (Tucker, J.)); Brooks v. Gilmore, No. 15-5659, 2017 WL 3475475 (E.D. Pa. 2017) (McHugh, J.); Corbin, 2021 WL 2550653, at *2-5; Jackson v. Capozza, No. 17-5126, 2019 WL 12288169, at *8-10 (E.D. Pa. Feb. 28, 2019), report and recommendation adopted by 2021 WL 1962887 (E.D. Pa. May 17, 2021) (Tucker, J.); Edmunds v. Tice, No. 19-1656, 2020 WL 6810409, at *8-9 (E.D. Pa. Aug. 31, 2020), report and recommendation adopted by 2020 WL 6799259 (E.D. Pa. Nov. 19, 2020) (Beetlestone, J.); McDowell v. DelBalso, No. 18-1466, 2019

WL 7484699, at *3-4 (E.D. Pa. Jan. 23, 2019), report and
recommendation adopted by 2020 WL 61162 (E.D. Pa. Jan. 3, 2020)
(Brody, J.); Brown v. Kaufman, 425 F. Supp. 3d 395, 408-10 (E.D.
Pa. 2019) (Slomsky, J.).

On the other hand, some courts have disagreed, finding that
the surgery hypothetical in the jury instruction passes
constitutional muster. See Bey v. Kauffman, No. 19-2127, 2020 WL
5775932, at *17 (E.D. Pa. July 15, 2020), report and
recommendation adopted by 2020 WL 5763550 (E.D. Pa. Sept. 28,
2020) (Joyner, J.); Gant v. Giroux, No. 15-4468, 2017 WL
2825927, at *14-15 (E.D. Pa. Feb. 27, 2017), report and
recommendation adopted by 2017 WL 2797911 (E.D. Pa. June 28,
2017) (Savage, J.), vacated and remanded in light of
Commonwealth's concession, Order, No. 17-2559 (3d Cir. Sept. 4,
2018); Baxter v. McGinley, No. 18-0046, 2019 WL 7606222, at *5-6
(E.D. Pa. Dec. 5, 2019), report and recommendation adopted by
2020 WL 299517 (E.D. Pa. Jan. 17, 2020) (Joyner, J.), aff'd on
other grounds, 998 F.3d 542, 544 (3d Cir. 2021); Johnson v.
Varner, No. 01-2409, slip op., at 7-8, Doc. No. 24 (E.D. Pa.
Sept. 4, 2003) (Kauffman, J.); see also Walker v. Brittain, No.
18-3705, 2020 WL 4815874, at *18 (E.D. Pa. Aug. 19, 2020)
(Kearney, J.) (finding Martinez exception to procedural default
did not apply because PCRA counsel did render ineffective
assistance in failing to raise ineffective-assistance-of-trial-

12

counsel claim based on same reasonable doubt instruction where no court at the time of trial had found the instruction to be unconstitutional).

The instruction at issue here essentially told the jury not to assume that the only treatment for their loved one was "experimental" surgery, but instead to assume that "the only appropriate protocol for that life-threatening condition was surgery." I agree with Judge Lloret that this language heightens the error because "[a] family member confronted with [] a choice" where "'surgery' was the only reasonable hope--however dim-- for treating a 'life-threatening condition'" "would likely take action notwithstanding substantial doubts that the procedure will save the patient's life." See R. & R. 14, ECF No. 38 (quoting Shields v. Smith, No. 18-750, 2020 WL 6929097, at *14 (E.D. Pa. Oct. 5, 2020), report and recommendation adopted by 2020 WL 6888466 (E.D. Pa. Nov. 24, 2020) (DuBois, J.)). Therefore, I agree with Judge Lloret's determination that the reasonable doubt instruction in this case was unconstitutional. See R. & R. 11-14, ECF No. 38.

## B. **The State Court's Decision was Contrary to Clearly Established Supreme Court Law**

Because the Superior Court examined the question raised here, deciding that the instruction in question was constitutional, the Court must determine whether that decision

was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. 18 U.S.C. § 2254(d)(1).

The Superior Court reviewed the PCRA court's dismissal of Petitioner's ineffective assistance of counsel claim for failing to object to the trial court's reasonable doubt instruction by first examining "the jury charge as a whole to determine if it is fair and complete." Commonwealth v. Vando, 242 A.3d 457, 2020 WL 7028618, at *5 (Pa. Super. Nov. 30, 2020) (Table) (Unpublished Disposition) (Vando III). In its analysis, the Superior Court relied on the principle that, because defense counsel had no binding precedent in 2011 that would have supported an objection to the instruction, his failure to object was not ineffective assistance of counsel. Id. at *7 (citing Commonwealth v. Moore, 225 A.3d 1155 (Pa. Super 2019) (unpublished memorandum) and its finding that the same trial judge's analogy was "at best ambiguous," and when combined with the accurate definition of the reasonable doubt standard, did not support a finding that there was a "reasonable likelihood" that the jury applied the reasonable doubt standard in an unconstitutional manner).

The Supreme Court has acknowledged that while proof beyond a reasonable doubt does not require a "mathematical certainty," Holland v. United States, 348 U.S. 121, 138 (1954), it cannot be

14

construed as a "grave uncertainty" or "actual substantial
doubt." <u>Cage v. Louisiana</u>, 498 U.S. 39, 41 (1990) (holding that
the common meaning of the terms "substantial" and "grave"
suggested a "higher degree of doubt than is required for
acquittal under the reasonable-doubt standard") <u>overruled on
other grounds by</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 n.4 (1991);
<u>see also</u> <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 277 (1993).[3]

Judge Lloret's analysis that "[t]he Superior Court's
reliance in [Petitioner's] case on the 'at best ambiguous'
language from the decision in <u>Commonwealth v. Moore</u>, 2019 WL
6825166 at *5, . . . supports a finding here that the Superior
Court got it wrong" is persuasive. <u>See</u> R. & R. 17, ECF No. 38.
As Judge Pratter reasoned when addressing this very issue:

> The Superior Court should have stopped once it
> acknowledged that the instruction was ambiguous. That is
> because "[a] reviewing court has no way of knowing which
> of the two irreconcilable instructions the jurors
> applied in reaching their verdict. <u>Francis [v.
> Franklin</u>], 471 U.S. [307, 322 (1985)]. Whether or not
> the Superior Court "believe[d]" the jury applied the
> instruction in a constitutional manner is irrelevant.

---

[3] Meanwhile, when conducting the same analysis as required here,
the Third Circuit found a trial judge's statement in the
preliminary comments, but not repeated in the jury charge, that
the determination of reasonable doubt should be based on what
"you in your own heart and your own soul and your own spirit and
your own judgment determine is proof beyond a reasonable doubt"
required reversal. <u>United States v. Hernandez</u>, 176 F.3d 719, 729
(3d Cir. 1999).

Moore, 2022 WL 1749250 at *12. Thus, the Superior Court's decision is an unreasonable application of clearly established federal law as determined by the Supreme Court.

## C. Petitioner's Trial Counsel was Ineffective for Failing to Object

After determining that the reasonable doubt instruction was an unreasonable application of clearly established federal law as determined by the Supreme Court, it is necessary to evaluate whether, under Strickland, counsel was ineffective for failing to object to the instruction. The Superior Court held that the failure to object to the reasonable doubt instruction was not ineffective assistance of counsel because "[a]t the time of [Petitioner's] trial, there was no binding precedent for counsel to follow." Vando III at *7. In Cage and Sullivan, the Supreme Court held that "grave uncertainty" and "moral uncertainty" deserved no place in a reasonable doubt instruction.

Given the clearly established federal law as determined by Supreme Court, I agree that failure to object to the hypothetical included in the reasonable doubt instruction here satisfied Strickland's first prong in that counsel's error denied Petitioner effective assistance of counsel and "alter[ed] the entire evidentiary picture." 466 U.S. at 695-96. The failure to do so was particularly troublesome here because Petitioner's only available defense was reasonable doubt.

**D. Petitioner's Trial Counsel's Failure to Object to the Reasonable Doubt Instruction Caused Prejudice**

Under Strickland's second prong, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."[4] 466 U.S. at 692. A considerable defect in a reasonable doubt instruction is not harmless and "vitiates all the jury's findings." Sullivan, 508 U.S. at 281. Where such a defect exists, a "criminal trial cannot reliably serve its function." Id. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland 466 U.S. at 696. As the Third Circuit observed:

> It is well settled that courts applying Strickland's prejudice test must consider the strength of the evidence against the defendant. Without considering the strength of the evidence against the defendant, a court cannot determine whether there was a reasonable probability of a different result. The greater the support a verdict has in the record, the less likely it is to have been affected by errors. Where the magnitude of the evidence against the defendant is such that he cannot show he was deprived of a reliable trial result, prejudice under Strickland is not met.

---

[4] As Judge Lloret acknowledges, the question of whether a defective reasonable doubt instruction is "structural error" that precludes a prejudice inquiry under Strickland is unresolved. See Shields v. Smith, 2020 WL 6929097, at *11-15. Thus, the Court will also conduct an analysis under Strickland's second prong.

United States v. Calhoun, 600 F. App'x 842, 844-45 (3d Cir.
2015) (citing and quoting Strickland, 466 U.S. at 696 ("In every
case the court should be concerned with whether, despite the
strong presumption of reliability, the result of a particular
proceeding is unreliable . . . ."); Albrecht v. Horn, 485 F.3d
103, 128-29 (3d Cir. 2007) (finding no prejudice from counsel's
failure to request limiting instruction where there was "ample
if not overwhelming evidence of [the defendant's] guilt"); Buehl
v. Vaughn, 166 F.3d 163, 171-72 (3d Cir. 1999) (finding that the
defendant could not show the absence of a limiting instruction
deprived him of a fair trial "[i]n view of the magnitude of the
evidence.")).

Prejudice under these circumstances is found when "there is
a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.
A reasonable probability is a probability sufficient to
undermine confidence in the outcome." Strickland, 466 U.S. at
694.

Judge Lloret's review of the entire state court trial
record shows that although it is true that witness testimony was
somewhat inconsistent, the evidence conclusively demonstrates
that Petitioner was present in the bar where the confrontation
began, led the victim out the back door, punched the victim
(causing him to fall to the ground), and thereafter bragged

about his involvement in the homicide to his fellow inmates and other members of the Latin Kings. Notably, the evidence is undisputed that no eyewitness saw Petitioner possess the murder weapon on the night of the incident or shoot the victim. This lack of eyewitness testimony, coupled with a lack of physical evidence linking Petitioner to the actual shooting, renders the Commonwealth's proof relatively weak and weighs in favor of finding prejudice.

### 1. Events at the ZIP Code Bar

Three witnesses--Maria Pagan a/k/a Maria Nunez, Angel Cruz a/k/a "King Quiet Storm", and Oscar Bermudez a/k/a "King Fat Joe"--testified to the events at the ZIP Code Bar on the night of the incident. The three had minor inconsistencies among their testimony, and two testified that they believed the victim was to be given a beating in the alley behind the bar only for falsely claiming to be a Latin King.

In the back alley, both Cruz and Bermudez saw Petitioner punch the victim. Cruz saw Petitioner's co-defendant, Navarro, pull out a gun and fire shots into the back of the victim's head, while Bermudez heard several shots but did not see who pulled the trigger or where the bullets landed. Nunez was in the back alley, but she did not witness the killing. Thus, no witness testified to seeing Petitioner shoot the victim.

**2. Petitioner's Discussion of the Incident Afterwards**

Nunez, Cruz, and Bermudez testified to the events after the shooting, in addition to three new witnesses--Jose Serrano, Lynwood Lanier, and Eric Alamo. Only Nunez, whose account was inconsistent,[5] testified that Petitioner bragged to her about being the one to shoot the victim several days after the incident.

Three witnesses testified that Petitioner admitted to punching the victim. Bermudez testified that Petitioner described punching the victim in the face. Serrano and Lanier, Petitioner's fellow inmates, both testified that Petitioner told them he punched the victim during the incident that led to the murder.

Three witnesses testified that Petitioner's co-defendant, Navarro, bragged about being responsible for the homicide. Cruz testified that the night after the shooting, he asked both Petitioner and Navarro why the victim had to be killed, and they both stated that "it had to be done" because of the victim's disrespectful behavior toward the Latin Kings. Further, Cruz overheard Navarro bragging about the homicide while housed with Navarro at a state correctional institution. Bermudez testified

---

[5] Nunez also testified that after the shooting, she saw King KR (a Latin King member unidentified by another name in the record) with a revolver and that he told her he was the one who shot the victim.

that Navarro admitted that he "emptied the whole clip on the guy." Alamo testified that while incarcerated with Navarro, Navarro told him that Navarro had "killed the wrong guy." Navarro told Alamo about the incident at the ZIP Code Bar, then said he had shot the victim because he thought the victim was "one of the guys . . . that shot his brother Josh and left him on the railroad for dead."

Apart from witness testimony, which clearly suggested that Petitioner only punched the victim whereas Navarro shot and killed the victim, there was an absence of evidence linking Petitioner to the shooting, such as DNA or fingerprints matching Petitioner at the scene, a recovered firearm linked to the shooting, or security camera footage to identify the actors. Moreover, the witnesses who were present the night of the incident all testified that they expected that the outcome for the victim falsely claiming to be a Latin King would be a beating in the back alley. That Navarro killed the victim because he believed the victim had killed his brother, as he expressed to Alamo, provides an explanation for why the victim was killed rather than beaten. From the testimony, it is equally plausible, therefore, that Petitioner was not aware of Navarro's reasoning for shooting the victim, and indeed, only became aware of Navarro's motivation after he heard Alamo's testimony.

Although Petitioner was charged with first-degree murder and conspiracy to commit murder, Petitioner was convicted instead of the lesser offense of third-degree murder.[6] Given the lack of physical evidence or witness testimony suggesting that Petitioner knew or intended the victim to be shot combined with the confusing jury instruction, I agree with Judge Lloret that "[h]ad that jury been properly instructed with regard to the type of 'reasonable doubt' that would cause them to 'hesitate to act,' there is a reasonable likelihood--enough to 'undermine confidence' in the outcome--that this jury would have acquitted [Petitioner], as the federal jury did, or failed to reach a verdict, as the first state court jury did." See R. & R. 38, ECF No. 38 (quoting Strickland, 466 U.S. at 694).

**V. CONCLUSION**

For the reasons set forth above, taking into consideration that neither party objected to Judge Lloret's Report and Recommendation, and after independent review of the dispositive legal issue in this case, the Court will adopt the Report and Recommendation, grant Petitioner's habeas petition on the single

---

[6] 18 PA. STAT AND CONS. STAT. § 2502 (West 1978) provides that a criminal homicide constitutes murder of the first degree "when it is committed by an intentional killing"; murder of the second degree "when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony"; and murder of the third degree as "[a]ll other kinds of murder."

issue of the constitutionality of the reasonable doubt instruction given to the jury at trial, and instruct the Commonwealth to retry Petitioner within a reasonable period of time. Given the Court's ruling, the Court need not consider Petitioner's other arguments, and those arguments will be dismissed as moot.

An appropriate order follows.